UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ARIEL RODRIGUEZ INSUA, | ) | CASE NO. 4:26-cv-437 |
| | ) | |
| Petitioner, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| KRISTI NOEM, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

Petitioner Ariel Rodriguez Insua, an immigrant detained at the Northeast Ohio Correctional Center in Youngstown, Ohio, petitions for a writ of habeas corpus under 28 U.S.C. § 2241. (Doc. No. 1 (Petition), at 1.[1]) The Court directed respondents Kristi Noem, Secretary, U.S. Department of Homeland Security ("DHS"); Todd M. Lyons, Acting Director, U.S. Immigration and Customs Enforcement ("ICE"); Derek Gordon, Acting Executive Associate Director, Homeland Security Investigations ("HSI"), ICE; Marcos Charles, Acting Executive Associate Director, Enforcement and Removal Operations ("ERO"), ICE; Daren K. Margolin, Director, Executive Office for Immigration Review; and Kenneth Hoover, Warden of the Northeast Ohio Correctional Center (collectively, the "government") to show cause why the writ should not be granted. (Doc. No. 4

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

(Order to Show Cause).) The government responded. (Doc. No. 7 (Response).) The petition is now fully briefed and at issue. (*See* Doc. No. 9 (Reply).)

As it has done in courts across the country for months, the government argues that unadmitted immigrants like Rodriguez Insua, who were detained after having lived in the United States for years, are "seeking admission" into the United States such that they are subject to mandatory detention under 8 U.S.C. § 1225(b)(2) pending removal proceedings. As it has ruled in prior cases, this Court disagrees with the government's interpretation of the statute. *See generally Lemus v. Lynch*, No. 4:26-cv-203, 2026 WL 496731 (N.D. Ohio Feb. 23, 2026); *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-cv-2061, 2025 WL 3187080 (N.D. Ohio Nov. 14, 2025). Unadmitted immigrants like Rodriguez Insua are governed by 8 U.S.C. § 1226(a)'s discretionary bond provision. For the reasons more thoroughly set forth below, the petition (Doc. No. 1) is GRANTED.

I. BACKGROUND

On July 8, 2025, ICE, in coordination with the United States Department of Justice, announced a new government policy. *See Duran-Rojas v. Raycraft*, No. 25-cv-14051, 2026 WL 243205, at *1 (E.D. Mich. Jan. 29, 2026). Under this new policy, "noncitizens who have resided in the United States for over two years and who are apprehended in the interior of the country are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)." *Chitu v. Harper*, No. 2:25-cv-3180, 2026 WL 279634, at *1 (W.D. Tenn. Feb. 3, 2026) (citation omitted). For decades prior to the announcement of this policy, "DHS afforded those same persons bond hearings under 8 U.S.C. § 1226(a)." *Id.* (citations omitted). The Board of Immigration Appeals ("BIA") affirmed this new policy in the *Matter of Yajure Hurtado*. 29 I. & N. Dec. 216 (BIA 2025). (*See* Doc. No. 1 ¶ 41.)

2

Rodriguez Insua is one of the many immigrants across the country who have been denied bond hearings under this new policy. Rodriguez Insua is a 22-year-old citizen of Cuba. (Doc. No. 1 ¶¶ 1, 13.) He entered the United States and was initially detained on April 24, 2022. (*Id.* ¶ 60.) He was released three days later and has resided continuously in the United States—and in particular, St. Cloud, Florida—ever since. (*Id.* ¶¶ 60–61.) On January 27, 2026, Rodriguez Insua was detained in Orlando, Florida by local law enforcement agents. (*Id.* ¶ 62.) He was thereafter detained pursuant to an immigration hold by DHS through ICE. (*Id.*)

Rodriguez Insua filed the present petition on February 21, 2026, arguing that his detention without a bond hearing violates both the Immigration and Nationality Act ("INA") and his Fifth Amendment right to procedural due process. (*See generally* Doc. No. 1.) He argues that his detention is governed by § 1226(a), under which he is entitled to a bond hearing. (*Id.* ¶ 63.) He seeks, among other relief, a declaration that his detention is governed by § 1226(a) and a further declaration that his continued detention without an individualized bond hearing violates the INA and the Due Process Clause. (*Id.* at 23–24.)

The government filed an abbreviated response, in which it reasserts its position that immigrants, such as Rodriguez Insua, who have resided in this country for more than two years prior to detention, are properly subject to mandatory detention under § 1225(b). (Doc. No. 7, at 1–3.) Without waiving any appellate rights, and in effort to expedite the Court's consideration of this case, however, the government acknowledges this Court's prior decisions finding the detention of such individuals governed by § 1226(a). (*Id.* at 4 (citing *Lemus* and *Chavez*.).) The government candidly concedes that "this Court's decision in *Lemus* would control the result here if the Court adheres to that decision, since the facts are not materially distinguishable for purposes of the

3

Court's decision on the legal issue of which statutory provision authorizes Petitioner's detention." (*Id.*)

The Court sees no reason to depart from its holdings in *Chavez* and *Lemus* and finds that Rodriguez Insua's detention is governed by § 1226(a). The Court briefly explains its decision below.

## II.    LAW AND ANALYSIS

The issue here is narrow: whether Rodriguez Insua's detention is governed by 8 U.S.C. § 1225(b)(2)'s mandatory detention provision or 8 U.S.C. § 1226(a)'s discretionary bond provision.[2] Neither party suggests that any of the INA's other mandatory detention provisions, *see* 8 U.S.C. § 1226(c) (providing for mandatory detention of immigrants accused or convicted of certain crimes); 8 U.S.C. § 1225(b)(1) (providing for mandatory detention of certain asylum seekers who have been present in the United States for fewer than two years), apply here. Indeed, there is no indication that Rodriguez Insua was accused or convicted of any crime, and Rodriguez Insua has been present in the United States for almost 4 years with "no prior criminal encounters." (Doc. No. 1 ¶ 2.) Accordingly, the Court only addresses §§ 1225(b)(2) and 1226(a).

### 1.    *Legal Standard and Relevant Statutes*

Rodriguez Insua filed this petition under 28 U.S.C. § 2241. Section 2241 provides "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an

---

[2] In its shortened response, the government indicates that it is not waiving its argument that habeas petitioners, like Rodriguez Insua, should be required to first exhaust their administrative remedies. (*See* Doc. No. 7, at 1.) The Court addressed the issue in *Lemus* and concluded that it would not require prudential exhaustion, finding that the administrative remedy was inadequate because the BIA had predetermined the issue when it announced its decision in *Hurtado*, that the legal question at issue was fit for resolution, and that delay would mean hardship in the form of continued detention in violation of statutory and due process rights. *Lemus*, 2026 WL 496731, at *6–8 (citing cases). For the same reasons articulated in *Lemus*, the Court waives administrative exhaustion here.

affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)).

Turning to the relevant detention statutes, 8 U.S.C. § 1225(b) governs the detention of "aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings*, 583 U.S. at 297. As relevant here, § 1225(b)(2) provides for the mandatory detention of "applicant[s] for admission" who are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2). While § 1225(b) provides specific rules for immigrants seeking entry into the United States, § 1226(a) provides the "default rule" for the detention of immigrants "already in the country[.]" *Jennings*, 583 U.S. at 288–89. Immigrants detained under § 1226(a) may be released on bond or conditional parole. 8 U.S.C. § 1226(a)(2).

This case calls upon the Court to interpret §§ 1225(b)(2) and 1226(a). When interpreting statutes, courts "must give effect to the clear meaning of statutes as written." *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation and quotation marks omitted). In so doing, the courts "assign each word of the statute its ordinary, contemporary, common meaning . . . , while keeping in mind that statutory language has meaning only in context." *Id.* (citations, quotation marks, and alterations omitted). Finally, "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. D 339 (2001) (citation and quotation marks omitted).

    2.    <u>Sections 1225(b)(2) and 1226(a)</u>

    a.  The Relevant Text

The Court begins with the relevant text. Section 1226(a) states, in relevant part, "[o]n a

5

warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1225(b)(2) then states, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a[.]" 8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). "Admission" in turn is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Putting these statutes together, it would appear that § 1226(a) provides a general rule, while § 1225(b)(2) provides a carveout to that rule. Section 1226(a) applies broadly to immigrants arrested and detained pending removal determinations. Meanwhile, § 1225(b)(2) carves out from § 1226(a) those immigrants who are (1) either present in the United States without having lawfully entered after inspection and authorization by an immigration officer or arriving in the United States and (2) seeking lawful entry via inspection and authorization by an immigration officer.

On this reading, § 1225(b)(2) does not apply to Rodriguez Insua. While he may be present in the United States without admission, and thus is an "applicant for admission," he is not seeking to lawfully enter via inspection and authorization by an immigration officer. It would strain the words of the statute to say that one who has been in the United States for several years is seeking entry. *See e.g., Lopez-Campos*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025) ("[T]hose like [petitioner], who have been here for years upon years and never proceeded to obtain any form of citizenship . . . are not 'seeking' admission"); *Barrera v. Tindall*, No. 3:25-cv-541, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) ("Noncitizens who are present in the country for years,

6

like [petitioner] who has been here 20 years, are not actively 'seeking admission.'"). Rather, as an immigrant arrested and detained while "already in the country[,]" *Jennings*, 583 U.S. at 289, Rodriguez Insua falls more aptly within § 1226(a)'s default rule. *See, e.g., Lopez-Campos*, 797 F. Supp. 3d at 784 ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country for over twenty-six years and was already within the United States when apprehended and arrested during a traffic stop, and not upon arrival at the border.").

The Court understands the government's position, however, to be that Rodriguez Insua's very presence in the United States as an unadmitted immigrant renders him subject to § 1225(b)(2). Section 1226(a), as the government has previously argued, applies only to immigrants who were admitted into the United States and later became deportable. The government's textual analysis is flawed.

First, 8 U.S.C. § 1225(a)(3) does not support its reading. Section 1225(a)(3) reads, in relevant part, "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission . . . . shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). The government argues that the use of the term "otherwise" indicates that all applicants for admission are seeking admission. (*See* Doc. No. 7, at 3 (citing cases).) Not so. To borrow an analogy from the well-reasoned dissent in the recent Fifth Circuit decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026),

> the subsection Congress actually wrote is more like saying, at the end of football season, "All students who are football players or otherwise seeking to play football or cheerlead should come to the gym for an info session this evening." In a grammatical void, we might be tempted to equate "football players" with "students seeking to play football," or deem the former a subset of the latter, but the players on the actual football team (the high school equivalent of a statutory term of art) would likely disagree.

*Id.* at *17 (Douglas, J. dissenting). The government's grammatical sleight-of-hand is unpersuasive.

7

Next, is the fact that the government's reading would render the term "seeking admission" entirely superfluous of the term "applicant for admission." This Court, however, will not presume that Congress intended its words to be redundant or superfluous. *See TRW Inc.*, 534 U.S. at 31 (directing courts to construe statutes as to not render any word superfluous). If Congress meant for all "applicants for admission" to be understood as "seeking admission" it would not have used both terms in the same sentence. *Sumba v. Crowley*, No. 1:25-cv-13034, 2025 WL 3126512, at *4 (N.D. Ill. Nov. 9, 2025) ("[T]he [c]ourt rejects as implausible the government's contention that two distinct terms in the same subparagraph—'applicant for admission' and 'an alien seeking admission'—somehow bear the *same* meaning even though they are (obviously) *different* terms." (emphasis in original)).[3]

Relatedly, the government's interpretation fails to give effect to Congress's choice to use the active term "seeking" in describing those immigrants covered by § 1225(b)(2). "Seeking" "implies action[.]" *Lopez-Campos*, 797 F. Supp. 3d at 781; *see also Sumba*, 2025 WL 3126512, at *4 ("[A] present participle stated in the progressive tense [] implies some ongoing, *affirmative* action[.]" (emphasis in original)). "Seeking" requires something more than mere passive presence in the United States. There is nothing in the record that suggests that Rodriguez Insua, who has been present in the United States for several years, was actively seeking admission when he was detained by local law enforcement.

---

[3] In prior cases, the government has argued that redundancies in statutes are common and that a redundancy does not permit a court to "rewrite . . . another portion of the statute contrary to text." *See Barton v. Barr*, 590 U.S. 222, 239, 140 S. Ct. 1442, 206 L. Ed. 2d 682 (2020). That redundancy may, at times, be unavoidable, *see Barton*, 590 U.S. at 239 ("[S]ometimes the better overall reading of the statute contains some redundancy." (citations omitted)), does not change the "cardinal principle" that, where possible, courts should avoid rendering Congress's words "superfluous, void, or insignificant." *TRW Inc.*, 534 U.S. at 31. This is not a situation where the "better overall reading of the statute contains some redundancy." *Barton*, 590 U.S. at 239. To the contrary, as discussed above, a plain reading of the relevant statutes results in a reading that avoids any redundancy. Far from "rewrite[ing]" the statute, this reading gives effect to each word written by Congress.

Finally, the position that § 1226(a) only applies to admitted immigrants conflicts with the statute itself. Section 1226(a) provides for discretionary bond to immigrants "arrested and detained pending" a removal determination—it makes no distinction between admitted and unadmitted immigrants. 8 U.S.C. § 1226(a). Further, § 1226(c)(1)(A, D, E) carves out certain inadmissible immigrants from § 1226(a)'s discretionary bond provision. 8 U.S.C. § 1226(c)(1)(A, D, E). If § 1226(a) only applied to admitted immigrants, it would be unnecessary for Congress to carve out certain inadmissible immigrants in § 1226(c)(1)(A, D, E). Again, this Court will not presume that Congress intended that its words would be superfluous. *TRW Inc.*, 534 U.S. at 31 (directing courts to construe statutes as to not render any word superfluous). Overall, the text of the statute supports the Court's reading.

### b. The Relevant Context and Structure

The structure of the overall statutory scheme, as described in *Jennings,* 583 U.S. 281, further supports this Court's reading. In *Jennings*, the Supreme Court described § 1226(a) as the "default rule" that applies to immigrants "present in the country," including immigrants "who were inadmissible at the time of entry[.]" *Id.* at 288. Meanwhile, the Supreme Court described § 1225(b) in more specific terms. The Supreme Court noted that § 1225(b) operates within a process that "generally begins at the Nation's borders and ports of entry[.]" *Id.* at 287. The Supreme Court further noted that "§ 1225(b) applies primarily to aliens seeking entry into the United States[.]" *Id.* at 297. The Supreme Court's analysis in *Jennings* thus supports the Court's reading that § 1225(b)(2) applies to immigrants seeking to lawfully enter the United States, while § 1226(a)

9

provides a default rule applicable to immigrants detained in the United States, regardless of whether they were originally admitted.

In prior cases, the government has argued that the Supreme Court's analysis in *Jennings* supports its reading. In doing so, the government has pointed to two isolated statements in *Jennings*: (1) "applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)[,]" *Jennings*, 583 U.S. at 287, and (2) "[§ 1225(b)] applies primarily to aliens seeking entry to the United States ('applicants for admission' in the language of the statute.)" *Id*. at 297. Using these isolated statements, the government has argued that the Supreme Court understood "seeking admission" and "applicant for admission" to be one and the same and resultantly, understood § 1225(b)(2) to apply to all unadmitted immigrants in the United States. But when reading *Jennings* as a whole, it becomes clear that the Supreme Court did not construe § 1225(b) to apply so broadly. The Supreme Court understood § 1225 to operate "at the Nation's borders and ports of entry" and involve the "inspect[ion] [of immigrants] by immigration officers[.]" *Id*. at 287. This language does not indicate broad application to all unadmitted immigrants in the United States. Rather, as other courts in the Sixth Circuit have found, this language indicates that § 1225(b)(2) applies to those *arriving in the country*. *See, e.g., Contreras-Cervantes v. Raycraft*, No. 2:25-cv-13073, 2025 WL 2952796, at *7 (E.D. Mich. Oct. 17, 2025). In light of the foregoing, the structure of the relevant statutes, as described by the Supreme Court in *Jennings*, supports the Court's reading.

### c. The Relevant History

The history of § 1226(a) further supports the Court's reading. Like other courts within the Sixth Circuit, *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *7 (E.D. Mich. Sept. 9, 2025); *Contreras-Lomeli v. Raycraft*, No. 2:25-cv-12826, 2025 WL 2976739, at *7 (E.D.

10

Mich. Oct. 21, 2025), this Court finds persuasive the historical analysis contained in *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025):

> Before [the Illegal Immigration Reform and Immigration Responsibility Act of 1994 ("IIRIRA")] passed, the predecessor statute to Section 1226(a) governed deportation proceedings for all noncitizens arrested within the United States. [] This predecessor statute, like Section 1226(a), included discretionary release on bond. [] Upon passing IIRIRA, Congress declared that the new Section 1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond a[] [noncitizen] who is not lawfully in the United States." []

*Id.* at 1260 (internal citations omitted). Immigrants unlawfully in the United States were within the scope of § 1226(a)'s predecessor, and Congress declared § 1226(a) to have the same scope as its predecessor. It thus stands to reason that immigrants unlawfully in the United States fall within § 1226(a).

Section 1226(a)'s recent history via the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025), further supports this reading. The Laken Riley Act added § 1226(c)(1)(E), which, in relevant part, mandates detention of immigrants who are (1) in the United States without admission or parole and (2) have been arrested, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E). If, as the government argues, § 1226(a) only applied to admitted immigrants, Congress would not have had to carve out certain unadmitted immigrants using the Laken Riley Act. Further, if § 1225(b)(2) mandates detention of all unadmitted immigrants, then it would be pointless for Congress to mandate the detention of a subset of those unadmitted immigrants using the Laken Riley Act. This Court "will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)." *Lopez-Campos*, 797 F. Supp. 3d at 784 (citation omitted); *Barrera*, 2025 WL 2690565, at *4 (citation omitted).

### d. Relevant Case Law

In the end, the Court finds the government's interpretation unpersuasive. And the Court is

11

not alone. The vast majority of courts to consider it have rejected the government's interpretation.[4] Indeed, almost every district court within the Sixth Circuit to consider it has rejected the government's interpretation.[5] These courts found, as the Court (once again) finds here, that immigrants like Rodriguez Insua who have spent years in the United States before being detained are subject to 8 U.S.C. § 1226(a)'s discretionary bond provision—not 8 U.S.C. § 1225(b)'s mandatory detention provision.

The Court is aware of a handful of non-binding decisions in which courts adopted the government's interpretation, chief among them being a recent decision from the Fifth Circuit Court of Appeals. *Buenrostro-Mendez*, 2026 WL 323330. Respectfully, this Court disagrees with the Fifth Circuit and other courts adopting the government's interpretation for the reasons discussed above, namely: (1) they fail to give effect to, and indeed render superfluous, the term "seeking admission" in § 1225(b)(2) and portions of § 1226(c); (2) they fail to read the Supreme Court's analysis in *Jennings* holistically, and thus fail to properly consider the overall statutory scheme; and (3) they fail to appropriately consider the relevant legislative history, and thus fail to see that Congress intended to maintain the discretionary bond framework. Indeed, the thorough and well-reasoned dissent in *Buenrostro-Mendez* identifies some of these same deficiencies. *See generally Buenrostro-Mendez*, 2026 WL 323330, at *10–18 (Douglas, J. dissenting).

---

[4] *See, e.g., Manzano v. Noem*, No. 2:26-cv-133, 2026 WL 371412 (D.N.M. Feb. 10, 2026); *Chang v. Noem*, No. 4:26-cv-3019, 2026 WL 357553 (D. Neb. Feb. 9, 2026); *Lal v. Noem*, No. C26-247, 2026 WL 369378 (W.D. Wash. Feb. 10, 2026); *Jose-de-Jose v. Noem*, No. 25-cv-1454, 2026 WL 360045 (W.D. Okla. Feb. 9, 2026); *Gomes v. Hyde*, 804 F. Supp. 3d 265 (D. Mass. 2025); *Rodriguez*, 779 F. Supp. 3d 1239; *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025); *Maldonado v. Olson*, 795 F. Supp. 3d 1134 (D. Minn. 2025); *Sumba*, 2025 WL 3126512.

[5] *See, e.g., Barrera*, 2025 WL 2690565, at *5 (collecting cases); *Pizarro Reyes*, 2025 WL 2609425; *Lopez-Campos*, 797 F. Supp. 3d 771; *Martinez-Elvir v. Olson*, 807 F. Supp. 3d 725 (W.D. Ky. 2025); *Contreras-Lomeli*, 2025 WL 2976739; *Orellana v. Noem*, No. 4:25-cv-112, 2025 WL 3006763 (W.D. Ky. Oct. 27, 2025); *Hernandez Capote v. Noem*, No. 25-cv-13128, 2025 WL 3089756 (E.D. Mich. Nov. 5, 2025); *Jimenez Garcia v. Raybon*, No. 2:25-cv-13086, 2025 WL 2976950 (E.D. Mich. Oct. 21, 2025); *Rodriguez v. Noem*, No. 1:25-cv-1196, 2025 WL 3022212 (W.D. Mich. Oct. 29, 2025); *Puerto-Hernandez v. Lynch*, 808 F. Supp. 3d 802 (W.D. Mich. 2025); *Sanchez Alvarez v. Noem*, 807 F. Supp. 3d 777 (W.D. Mich. 2025); *Ramos v. Olson*, 26-cv-8, 2026 WL 372887 (E.D. Ky. Feb. 10, 2026).

Additionally, the Fifth Circuit is not the only Federal Court of Appeals to have addressed the government's interpretation. Indeed, shortly after this Court issued its opinion in *Chavez*, and before the Fifth Circuit ruled in *Buenrostro-Mendez*, the Seventh Circuit Court of Appeals rendered a decision in *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025). For many of the same reasons this Court identifies above, the Seventh Circuit, albeit on a preliminary record, held that the government was unlikely to succeed on its argument that § 1225(b)(2) applied to all unadmitted immigrants in the United States. *Id.* at 1060–63. The limited number of courts of appeals that have addressed this issue do not agree on the issue,[6] and the vast weight of persuasive authority from across the country weighs against the government. The government provides no binding or persuasive authority convincing this Court to depart from its reading of §§ 1225(b)(2) and 1226(a).

\* \* \*

Considering the text, structure, and history of the relevant statutes, the Court rejects the government's interpretations of 8 U.S.C. §§ 1225(b)(2) and 1226(a). Section 1225(b)(2) does not apply to all unadmitted immigrants present in the United States, and § 1226(a) is not limited to immigrants admitted into the United States. Rather, § 1226(a) applies broadly to immigrants arrested and detained pending removal determinations. Meanwhile, § 1225(b)(2) carves out from § 1226(a) those immigrants who are (1) either present in the United States without having lawfully entered after inspection and authorization by an immigration officer or arriving in the United States and (2) seeking lawful entry via inspection and authorization by an immigration officer. Rodriguez Insua, who is currently detained pending a removal determination after being in the United States for several years, and who was not seeking to lawfully enter the United States, is governed by §

---

[6] Indeed, the Fifth Circuit Court of Appeals panel that decided *Buenrostro-Mendez* issued a split decision.

13

1226(a) and its bond framework. The government's application of § 1225(b)(2) procedures to Rodriguez Insua renders his detention "in violation of the . . . laws . . . of the United States[,]" warranting habeas relief. 28 U.S.C. § 2241(c).

### 3. *Due Process*

The government's detention of Rodriguez Insua without a bond hearing also violates the Constitution. The Due Process Clause of the Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) (citations omitted). To determine the process due, courts use the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Those factors are: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335 (citation omitted).

The *Mathews* analysis weighs in Rodriguez Insua's favor. First, the private interest at stake is the core liberty interest of being free from detention. *See Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." (citation omitted)). Second, the risk of erroneous deprivation is significantly elevated by the fact that the government refuses to operate under the appropriate statutory framework and provide Rodriguez Insua a bond hearing, and such risk could be mitigated by provision of the statutorily

14

required bond hearing. Finally, the government provides no argument regarding its own interest in not providing Rodriguez Insua with a bond hearing; indeed, the government's filings tellingly omit discussion of the *Mathews* analysis entirely.

The Court thus has no trouble concluding that the government violated Rodriguez Insua's right to due process when it applied § 1225(b)(2)'s mandatory detention provision despite his detention falling under § 1226(a)'s discretionary bond provision. This conclusion accords with various other courts within the Sixth Circuit. *See e.g., Casio-Mejia v. Raycraft*, No. 2:25-cv-13032, 2025 WL 2976737, at *9 (E.D. Mich. Oct. 21, 2025); *Garcia v. Raycraft*, No. 1:25-cv-1281, 2025 WL 3122800, at *7 (W.D. Mich. Nov. 7, 2025); *Godinez-Lopez v. Ladwig*, No. 2:25-cv-2962, 2025 WL 3047889, at *6 (W.D. Tenn. Oct. 31, 2025). This violation of the Due Process Clause warrants habeas relief under 28 U.S.C. § 2241.

### III. CONCLUSION

For the reasons stated above, Rodriguez Insua's petition (Doc. No. 1) is GRANTED. The government is ordered to either release Rodriguez Insua immediately or hold a hearing no more than seven days from the day of this order to determine whether to release Rodriguez Insua on bond pursuant to 8 U.S.C. § 1226(a) and consistent with this Court's determination. The Court ORDERS the government to file, within fourteen days from the day of this order, a certificate of compliance certifying that the government has complied with this order and stating whether Rodriguez Insua remains in custody.

**IT IS SO ORDERED**.

Dated: March 10, 2026

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**